# PROMISSORY NOTE

| Borrower: | Metro Service Group, Inc.<br>9641 Old Gentilly Road<br>New Orleans, LA 70127 | Lender: | JPMorgan Chase Bank, NA<br>Parc Fontaine LPO<br>4400 General DeGaulle Drive<br>New Orleans, LA 70131 |
|---|---|---|---|

**Principal Amount: $5,850,648.00**                                                     **Date of Note: March 30, 2016**

**PROMISE TO PAY.** Metro Service Group, Inc. ("Borrower") promises to pay to the order of JPMorgan Chase Bank, NA ("Lender"), in lawful money of the United States of America the sum of Five Million Eight Hundred Fifty Thousand Six Hundred Forty-eight & 00/100 Dollars(U.S. $5,850,648.00), together with simple interest at the rate of 3.150% per annum assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on March 30, 2016 and continuing until this Note is paid in full.

**PAYMENT.** Borrower will pay this loan in 84 payments of $77,837.88 each payment. Borrower's first payment is due May 1, 2016, and all subsequent payments are due on the same day of each month after that. Borrower's final payment due on April 1, 2023, may be greater if Borrower does not make payments as scheduled. Payments and any other credits shall be allocated among principal, interest and fees at the discretion of Lender unless otherwise required by applicable law. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown on loan account statements sent to the Borrower, Lender's address shown in any payment coupon book provided to the Borrower, or at such other place as Lender may designate in writing.

**Prepayment Premium.** The Borrower agrees that if the Borrower prepays all or any portion of the principal balance of this Note when interest is accruing at either a fixed rate or a variable rate that is based on the Treasury Securities Rate (if defined in this Note), whether voluntarily or involuntarily as a result of the acceleration of this Note, and including without limitation payments of principal during the Draw Period, such prepayment shall be accompanied by:

   I.   All accrued and unpaid interest on the principal amount prepaid, plus

   II.  A prepayment premium ("Premium") equal to the sum of the present value of the interest amounts for each billing month falling in the Remaining Period (including any partial billing months on a pro rata basis). The interest amounts shall be calculated by multiplying the amount of the reduction in the principal balance for each month as a result of the principal amount prepaid by the difference between the

Original Cost of Funds Rate minus the Current Cost of Funds Rate and then dividing by twelve (12). No Premium shall be due if the difference between the Original Cost of Funds Rate minus the Current Cost of Funds Rate is zero or negative. Present value shall be calculated by using the Current Cost of Funds Rate.

As used in this provision:

"Remaining Period" means the period from the date of the prepayment to the earlier of the next scheduled interest rate change date, if any, and the maturity date of this Note.

"Original Cost of Funds Rate" means the Treasury Constant Maturity Rate as of the later of the date of this Note or the date of the latest interest rate adjustment, if any, for a term closest to the period from that date to the earlier of the date of the next scheduled interest rate adjustment, if any, or the maturity date of this Note.

"Current Cost of Funds Rate" means the Treasury Constant Maturity Rate for a term closest to the Remaining Term, as of the date of the prepayment.

"Treasury Constant Maturity Rate" means the weekly average yield on United States Treasury Securities - Constant Maturity Series issued by the United States Government, as published by the Federal Reserve Board in Federal Reserve Statistical Release H. 15 (519).

If the Treasury Constant Maturity Rate is not available, then the Original Cost of Funds Rate and the Current Cost of Funds Rate shall be otherwise independently determined by Lender from an alternate, substantially similar independent source available to Lender or shall be calculated by Lender by a substantially similar methodology. Subject to the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Business Banking Loan Servicing Disputed Accounts Department, P.O. Box 6026 Chicago, IL 60680-6026.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 5.000% of the regularly scheduled payment or $25.00, whichever is greater. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** Upon the occurrence of any Event of Default, including, but not limited to, (i) any material adverse change in the business assets, affairs, prospects or financial condition of Borrower or any guarantor, (ii) failing to provide financial statements, copies of Federal tax returns and other information relating to the financial condition, properties and affairs of the Borrower, any guarantor or grantor, as provided for in this Note and/or any Related Document, or (iii) failure to pay upon final maturity, Lender may, at Lender's option and if permitted by applicable law, a) add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note, including any increased rate, and/or b), increase the interest rate on this Note by 3.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate allowed under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Payment Default.** Borrower fails to make any payment when due under this Note.

   **Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

   **Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

   **Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

   **Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

   **Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

   **Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

   **Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

   **Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

   **Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

   **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   **Judgments or Decrees.** One or more judgments or decrees shall be entered against the Borrower and such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal.

   **Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

   **Events Affecting Guarantor.** Any of the preceding Events of Default occurs with respect to any guarantor of the Indebtedness as if the

# PROMISSORY NOTE
## (Continued)

Page 2

word "guarantor" were substituted for the word "Borrower" in such Event of Default, or any guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty.

**Events Affecting Grantor.** Any of the preceding Events of Default occurs with respect to any grantor, pledgor or obligor of the Indebtedness as if "grantor", "pledgor" or "obligor" were substituted for the word "Borrower" in such Event of Default, or any grantor, pledgor, or obligor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Related Document or agreement.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

**LENDER'S RIGHTS.** Upon the occurrence of any Event of Default, Lender may declare the entire unpaid principal balance on this Note and the Indebtedness and all accrued unpaid interest immediately due, without notice (except that in the case of any Event of Default of the type described in the DEFAULT - Insolvency section herein, such acceleration shall be automatic and not at Lender's option), and then Borrower will pay that amount. Additionally, upon the occurrence of any Event of Default and until the entire unpaid principal balance on this Note and the Indebtedness is paid in full, without notice or demand and without waiving any other right or remedy, Lender may, at Lender's option, elect to impose increases in the interest rate pursuant to and as set forth in the section of this Note captioned "INTEREST AFTER DEFAULT" and, if included in this Note, the section captioned "PERFORMANCE BASED RATE CHANGES. Borrower shall be liable for any deficiency remaining after disposition of any collateral which Lender may choose to realize upon.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees.

**NSF CHECK CHARGE.** In the event that Borrower makes any payment under this Note by check and Borrower's check is returned to Lender unpaid due to nonsufficient funds in Borrower's deposit account, Borrower agrees to pay Lender an additional NSF check charge in an amount of $25.00.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** Borrower acknowledges this Note is secured by security interest in and lien upon all collateral described in any Related Document. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**ENFORCEABILITY AND ORGANIZATION.** Borrower is duly authorized to transact business in all states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Borrower's execution, delivery and performance of this Note and all the Related Documents have been duly authorized by all necessary action by Borrower. This Note and all the Related Documents constitute legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms. If applicable, Borrower is an entity which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the state of its organization.

**INFORMATION WAIVER.** Lender may provide, without any limitation whatsoever, to any one or more purchasers, potential purchasers, or affiliates of JPMorgan Chase & Co., any information or knowledge Lender may have about the undersigned or about any matter relating to this document and the Related Documents, and the undersigned hereby waives any right to privacy the undersigned may have with respect to such matters.

**INDEBTEDNESS.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents, together with interest on such amounts as provided in this Note, and all obligations, debts and liabilities, plus interest thereon, of Borrower or any one or more of them to Lender, as well as all claims by Lender against Borrower or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of this Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated and whether Borrower may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter become otherwise unenforceable; and further includes, without limitation, all principal, interest, and other amounts, costs and expenses payable under the Related Documents, whether executed by the Borrower or by any other person or entity, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Related Documents, together with interest thereon as provided in the Related Documents.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now existing or hereafter arising, executed in connection with the Indebtedness.

**LIABILITIES FOR OBLIGATIONS UNDER RELATED DOCUMENTS.** Borrower also promises to pay to Lender all of the Indebtedness. Borrower acknowledges that some of the Related Documents, pursuant to which Indebtedness may arise, may be executed only by persons or entities other than the Borrower.

**PURPOSE.** Borrower agrees that no advances under this Note shall be used for personal, family or household purposes and that all advances hereunder shall be used solely for business, commercial, agricultural or other similar purposes.

**JURY WAIVER.** THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER WHETHER ANY SUCH RIGHT NOW OR HEREAFTER EXISTS. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS.

**GOVERNING LAW.** The Lender's loan production office for this transaction is located at the address and in the State (the "LPO State") indicated in the LPO address or the loan production office address on the first page of this document. This document will be governed by and interpreted in accordance with federal law and the laws of the LPO State, except for matters related to interest and the exportation of interest, which matters shall be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations and opinions) and the laws of the State of Ohio. However, if there is ever a question about whether any provision of this document is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction which is evidenced by this document has been made in the State of Ohio.

**VENUE.** If there is a lawsuit, the undersigned agrees to submit to the jurisdiction of the courts of the county in the LPO State in which the Lender's loan production office is located.

**LATE CHARGES.** In the "Late Charge" provision set forth above, the following language is hereby added after the word "greater": "up to the maximum amount of Two Hundred Fifty Dollars ($250.00) per late charge".

**OVERPAYMENTS.** No refund of any overpayment made by Borrower with the final payment on this Note will be required if the overpayment is less than $1.00.

**DEPOSIT ACCOUNTS AND AFFILIATES OF LENDER.** For purposes of the section of this document entitled "Deposit Accounts" and no other, the term "Lender" shall mean not only the Lender, but also any other subsidiary or affiliate of JPMorgan Chase & Co. (each a "Lender Affiliate"). Therefore, the security interest granted to Lender and right to apply funds to the obligations of the undersigned under this document includes any and all funds that the undersigned may now and in the future have on deposit with Lender or any Lender Affiliate or in certificates of deposit or other deposit accounts with Lender or any Lender Affiliate as to which the undersigned is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Provided further, any failure of the undersigned to comply with or pay or perform any term, obligation, covenant or condition contained in any agreement between the undersigned and any Lender Affiliate shall be an event of default under this document.

**PRIMARY DEPOSIT ACCOUNTS.** Lender expects Borrower to maintain its primary deposit accounts at Lender. One of the factors the Lender will consider in modification or renewal of this Note is the status of such accounts.

# PROMISSORY NOTE
## (Continued)

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender's specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the impositon of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.**

**BORROWER:**

**METRO SERVICE GROUP, INC.**

By: _____
Jimmie M. Woods, Vice President of Metro Service Group, Inc.

By: _____
Glenn H. Woods, President of Metro Service Group, Inc.