

**Line of Credit Note**

**$3,900,000.00**
**Date: March 31, 2017**

**Promise to Pay.** On or before April 1, 2027, for value received, Metro Service Group, Inc. (the "Borrower") promises to pay to JPMorgan Chase Bank, N.A., whose address is 3420 Severn Avenue, Floor 02, Metairie, LA 70002 (the "Bank") or order, in lawful money of the United States of America, the sum of Three Million Nine Hundred Thousand and 00/100 Dollars ($3,900,000.00) or so much thereof as may be advanced and outstanding, plus interest on the unpaid principal balance computed on the basis of the actual number of days elapsed in a year of 360 days at the rate of 2.43% Per Annum above the Treasury Securities Rate (the "Note Rate"), and at the rate of 3.00% Per Annum above the Note Rate, at the Bank's option, upon the occurrence of any default under this Note, whether or not the Bank elects to accelerate the maturity of this Note, from the date such increased rate is imposed by the Bank. In this Note, "Treasury Securities Rate " shall mean the weekly average yield on United States Treasury Securities - Constant Maturity Series issued by the United States Government for a term of ten (10) years , as most recently published by the Federal Reserve Board in Federal Reserve Statistical Release H.15 (519), immediately prior to the date of this Note and most recently published before the effective date of each rate change upon this Note (provided, however, that if the sale of Treasury Securities by the United States Government has been suspended, or Treasury Securities are not being offered for sale, or the weekly average yield is no longer published by the Federal Reserve Board in Federal Reserve Statistical Release H.15 (519), or for any other reason the Bank is not able to obtain a quotation from the Federal Reserve for the sale of such Treasury Securities, then the Bank shall forthwith give notice thereof to the Borrower and advise the Borrower of a new index for determining the interest rate to be charged on this Note which, in the good faith judgment of the Bank, shall be substantially equivalent to the Treasury Securities Rate). The rate to be charged on this Note will change effective without notice on the first day of each ten (10) year anniversary after the date of this Note based upon the Note Rate then in effect.

**Initial Interest Rate.** For the first two(2) months from the date of this Note ("Initial Rate Period"), the unpaid principal balance of this Note shall accrue interest at a variable rate equal to the sum of the Adjusted LIBOR Rate. After the termination of the Initial Rate Period on June 1, 2017, the unpaid principal balance of this Note shall accrue interest as provided in the Promise to Pay paragraph.

**Definitions.** As used in this Note, the following terms have the following respective meanings:

**"Adjusted LIBOR Rate"** means the sum of the Applicable Margin plus the LIBOR Rate.

**"Applicable Margin"** means +3.86900% Per Annum.

**"Business Day"** means a day other than a Saturday, Sunday or any other day on which national banking associations are authorized to be closed.

**"Interest Period"** means each consecutive one month period (the first of which shall commence on the date of this Note) effective as of the first day of each Interest Period and ending on the last day of each Interest Period, provided that if any Interest Period is scheduled to end on a date for which there is no numerical equivalent to the date on which the Interest Period commenced, then it shall end instead on the last day of such calendar month.

**"LIBOR Rate"** means the offered rate for U.S. Dollar deposits of not less than $1,000,000.00 for a period of time equal to each Interest Period as of 11:00 A.M. City of London, England time two London Business Days prior to the first date of each Interest Period of this Note as shown on the display designated as "British Bankers Assoc. Interest Settlement Rates" on the Reuters Screen ("Reuters") LIBOR01 Page, or such other page or pages as may replace such pages on Reuters for the purpose of displaying such rate. Provided, however, that if such rate is not available on Reuters then such offered rate shall be otherwise independently determined by Bank from an alternate, substantially similar independent source available to Bank or shall be calculated by Bank by a substantially similar methodology as that theretofore used to determine such offered rate in Reuters. "London Business Day" means any day other than a Saturday, Sunday or a day on which banking institutions are generally authorized or obligated by law or executive order to close in the City of London, England. Each change in the rate to be charged on this Note will become effective without notice on the commencement of each Interest Period based upon the LIBOR Rate then in effect.

If any applicable domestic or foreign law, treaty, rule or regulation now or later in effect (whether or not it now applies to the Bank) or the interpretation or administration thereof by a governmental authority charged with such interpretation or administration, or compliance by the Bank with any guideline, request or directive of such an authority (whether or not having the force of law), shall
BBHD

make it unlawful or impossible for the Bank to maintain or fund the advances evidenced by this Note, then, upon notice to the Borrower by the Bank, the outstanding principal amount, together with accrued interest and any other amounts payable to the Bank under this Note shall be repaid (a) immediately upon the Bank's demand if such change or compliance with such requests, in the Bank's judgment, requires immediate repayment, or (b) at the expiration of the last Interest Period to expire before the effective date of any such change or request.

If the Bank determines that quotations of interest rates for the relevant deposits referred to in the definition of LIBOR Rate are not being provided for purposes of determining the interest rate as provided in this Note, then the Bank shall, at the Bank's option, give notice of such circumstances to the Borrower, whereupon (i) the obligation of the Bank to make advances evidenced by this Note shall be suspended until the Bank notifies the Borrower that the circumstances giving rise to the suspension no longer exists, and (ii) the Borrower shall repay in full the then outstanding principal amount of each advance evidenced by this Note, together with accrued interest, on the last day of the then current Interest Period.

In no event shall the interest rate exceed the maximum rate allowed by law. Any interest payment that would for any reason be unlawful under applicable law shall be applied to principal.

Interest will be computed on the unpaid principal balance from the date of each borrowing.

From the date of this Note until June 1, 2017 (the "Draw Period"), the Borrower may borrow sums under this Note, up to the principal amount of this Note, and may repay those sums at any time, at its option, subject to the terms of the Related Documents; *provided, however*, that if the Borrower so repays any sums, it may not later reborrow those sums. The Bank shall have no obligation to make any advance under this Note if any default, event of default or event that would constitute a default or event of default but for the giving of notice, the lapse of time or both, has occurred, is continuing or would result from the extension of credit.

During the Draw Period, interest shall be due and payable as it accrues, commencing on May 1, 2017 and continuing on the same day of each month thereafter.

During the period commencing on the day after the termination of the Draw Period, and continuing until this Note is paid in full, the Borrower shall make monthly payments as follows: commencing on July 1, 2017, and continuing on the same day of each calendar month thereafter until the maturity date of this Note, the Borrower shall pay the Bank monthly installments of principal and interest, each in such equal amount as is necessary to fully amortize the principal amount outstanding under this Note, accruing interest at the rate of interest in effect as of the last day of the Draw Period, by that date that is one hundred eighteen (118) months after the last day of the Draw Period. A final payment shall be due and payable on April 1, 2027, at which time the entire balance of unpaid principal plus accrued interest shall be due and payable immediately.

The Borrower shall make all payments on this Note and the other Related Documents, without setoff, deduction, or counterclaim, to the Bank at the Bank's address above or at such other place as the Bank may designate in writing. If any payment of principal or interest on this Note shall become due on a day that is not a Business Day, the payment will be made on the next succeeding Business Day. The term "Business Day" in this Note means a day other than a Saturday, Sunday or any other day on which national banking associations are authorized to be closed. Payments shall be allocated among principal, interest and fees at the discretion of the Bank unless otherwise agreed or required by applicable law. Acceptance by the Bank of any payment that is less than the payment due at that time shall not constitute a waiver of the Bank's right to receive payment in full at that time or any other time.

**Payment Recalculation.** During any period of time that the principal balance of this Note is accruing interest at a variable rate, then following each change in the variable rate, Bank at its discretion may recalculate the amount of each periodic payment of principal and interest thereafter due from Borrower. The recalculated payment amount shall be based upon the variable rate then in effect and shall be calculated in a manner to reflect the original amortization period measured from the date amortization commenced on this Note. The recalculated periodic payment amount will be communicated to Borrower in the periodic loan account statement sent to Borrower. Any such recalculation shall not change the maturity date provided for in this Note when a final payment of all outstanding principal, together with all accrued unpaid interest and any other amounts due under this Note shall be paid, even in the event any recalculation results in an increase in the final principal payment due on this Note.

**Prepayment Premium.** The Borrower agrees that if the Borrower prepays all or any portion of the principal balance of this Note when interest is accruing at either a fixed rate or a variable rate that is based on the Treasury Securities Rate (if defined in this Note), whether voluntarily or involuntarily as a result of the acceleration of this Note, and including without limitation payments of principal during the Draw Period, such prepayment shall be accompanied by:

    I.     All accrued and unpaid interest on the principal amount prepaid, plus

    II.    A prepayment premium ("Premium") equal to the sum of the present value of the interest amounts for each billing month falling in the Remaining Period (including any partial billing months on a pro rata basis). The interest amounts shall be calculated by multiplying the amount of the reduction in the principal balance for each month as a

result of the principal amount prepaid by the difference between the Original Cost of Funds Rate minus the Current Cost of Funds Rate and then dividing by twelve (12). No Premium shall be due if the difference between the Original Cost of Funds Rate minus the Current Cost of Funds Rate is zero or negative. Present value shall be calculated by using the Current Cost of Funds Rate.

As used in this provision:
"Remaining Period" means the period from the date of the prepayment to the earlier of the next scheduled interest rate change date, if any, and the maturity date of this Note.
"Original Cost of Funds Rate" means the Treasury Constant Maturity Rate as of the later of the date of this Note or the date of the latest interest rate adjustment, if any, for a term closest to the period from that date to the earlier of the date of the next scheduled interest rate adjustment, if any, or the maturity date of this Note.
"Current Cost of Funds Rate" means the Treasury Constant Maturity Rate for a term closest to the Remaining Period, as of the date of the prepayment.
"Treasury Constant Maturity Rate" means the weekly average yield on United States Treasury Securities – Constant Maturity Series issued by the United States Government, as published by the Federal Reserve Board in Federal Reserve Statistical Release H. 15 (519).
If the Treasury Constant Maturity Rate is not available, then the Original Cost of Funds Rate and the Current Cost of Funds Rate shall be otherwise independently determined by Lender from an alternate, substantially similar independent source available to Lender or shall be calculated by Lender by a substantially similar methodology.

**Late Fee.** If a payment is 10 days or more late, Borrower will be charged a late fee of 5.00% of the payment due or $25.00, whichever is greater, up to the maximum amount of $250.00 per late fee. Borrower shall pay the late payment charge upon demand by the Bank or, if billed, within the time specified.

**Dishonored Item Fee.** The Borrower will pay a fee to the Bank of $25.00 if the Borrower makes a payment on this Note and the check or preauthorized charge with which the Borrower pays is later dishonored.

**Purpose of Loan.** The Borrower acknowledges and agrees that this Note evidences a loan for a business, commercial, agricultural or similar commercial enterprise purpose, and that no advance shall be used for any personal, family or household purpose. The proceeds of the loan shall be used only for the Borrower's purchase of equipment.

**Credit Facility.** The Bank has approved a credit facility to the Borrower in a principal amount not to exceed the face amount of this Note. The credit facility is in the form of advances made from time to time by the Bank to the Borrower. This Note evidences the Borrower's obligation to repay those advances. The aggregate principal amount of debt evidenced by this Note is the amount reflected from time to time in the records of the Bank.

**Usury.** To the extent any law other than Federal law or Ohio law is deemed to govern this Note with respect to interest, the following provisions shall apply: The Bank does not intend to charge, collect or receive any interest that would exceed the maximum rate allowed by law. If the effect of any applicable law is to render usurious any amount called for under this Note or the other Related Documents, or if any amount is charged or received with respect to this Note, or if any prepayment by the Borrower results in the payment of any interest in excess of that permitted by law, then all excess amounts collected by the Bank shall be credited on the principal balance of this Note (or, if this Note and all other indebtedness arising under or pursuant to the other Related Documents shall have been paid in full, refunded to the Borrower), and the provisions of this Note and the other Related Documents shall immediately be deemed reformed and the amounts thereafter collectable reduced, without the necessity of the execution of any new document, so as to comply with the then applicable law. All sums paid, or agreed to be paid, by the Borrower for the use, forbearance, or detention of money under this Note or the other Related Documents shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the usury ceiling from time to time in effect and applicable to such indebtedness for so long as such indebtedness is outstanding.

**Per Annum.** In this Note the term "Per Annum" means for a year deemed to be comprised of 360 days.

**[The remainder of the page is intentionally left blank.]**

**Miscellaneous.** This Note binds the Borrower and its successors, and benefits the Bank, its successors and assigns. Any reference to the Bank includes any holder of this Note. This Note is subject to that certain Credit Agreement by and between the Borrower and the Bank, dated March 31, 2017, and all amendments, restatements and replacements thereof (the "Credit Agreement") to which reference is hereby made for a more complete statement of the terms and conditions under which the loan evidenced hereby is made and is to be repaid. The terms and provisions of the Credit Agreement are hereby incorporated and made a part hereof by this reference thereto with the same force and effect as if set forth at length herein. No reference to the Credit Agreement and no provisions of this Note or the Credit Agreement shall alter or impair the absolute and unconditional obligation of the Borrower to pay the principal and interest on this Note as herein prescribed. Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement. If any one or more of the obligations of the Borrower under this Note or any provision hereof is held to be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining obligations of the Borrower and the remaining provisions shall not in any way be affected or impaired; and the invalidity, illegality or unenforceability in one jurisdiction shall not affect the validity, legality or enforceability of such obligations or provisions in any other jurisdiction. Time is of the essence under this Note and in the performance of every term, covenant and obligation contained herein.

Address: 9641 OLD GENTILLY RD
NEW ORLEANS, LA 70127

**Borrower:**

Metro Service Group, Inc.

By: _____

Jimmie M. Woods — Vice President
Printed Name — Title

Date Signed: 4-3-17

By: _____

Glenn H. Woods — President
Printed Name — Title

Date Signed: 4/3/17

05LA0577239.47